Isidore Wasservogel, Spec. Ref.
Pursuant to an order of the Justices of the Appellate Division, First Department, dated February 16, 1960, the undersigned was appointed ‘ ‘ to make a new determination of alimony, which may include the fixation of past alimony nunc pro tunc * * * and upon the issue of [plaintiff’s] waiver and estoppel.”
In or about October, 1949, plaintiff obtained a divorce from defendant, a music teacher in a small New England college. Prior thereto, the parties had separated and arranged an amicable adjustment and equal division of their assets which, at that time, amounted to approximately $15,000. The divorce decree obtained by plaintiff provided for alimony payments by defendant at the rate of $3,900 per annum. In 1950, after defendant’s remarriage, plaintiff and defendant entered into a written agreement whereby the annual alimony payments were reduced from $3,900 to $1,600 per annum.
In 1953, and again in 1954, plaintiff moved to punish defendant for failure to pay certain arrears of alimony. The 1954 application resulted in a contempt order which was handed down by *647 a Justice of the Supreme Court against the defendant whereby the latter was. fined the sum of $840, payable at the rate of $40 per month in addition to current alimony. This fine was subsequently paid and is no part of the present litigation before this court. Despite this contempt order, however, defendant-continued to pay plaintiff only the sum of $35 per month, which plaintiff accepted without protest for a period of approximately five years, from February, 1954 to February, 1959.
In February, 1959, plaintiff, by order to show cause pursuant to section 1171-b of the Civil Practice Act, moved for a judgment in the sum of $6,050, representing alleged alimony arrears. This amount is the difference over the period of five years from 1954 to 1959 between the $35 a month defendant was paying plaintiff and the $1,600 a year which had previously been agreed upon by them. Defendant, pursuant to section 1170 of the Civil Practice Act, then moved for a reduction of alimony, retroactive to March, 1953. At the same time, he also moved to be relieved of the contempt order and the $840 fine which had been imposed upon him.
Plaintiff’s and defendant’s motions came on before Mr. Justice Cans on April 14,1959. Plaintiff’s motion to enter judgment for the arrears of alimony was denied and defendant’s motion to reduce alimony was granted. Upon appeal to the Appellate Division (10 A D 2d 567), however, the two pending applications were remanded to this court for hearing on the ground that they should not have been decided on affidavits alone.
In accordance with the determination of the Appellate Division, hearings were held before me in an effort to determine the financial condition and income of both parties. The record adduced upon these hearings clearly establishes that in all the prior proceedings and in her affidavits submitted to various Justices of this court, plaintiff concealed substantial assets and income. Her prior and present claims that she was “in desperate financial condition ” and “ in serious need of funds ” are completely refuted by the credible testimony and documentary evidence. Contrary to plaintiff’s plea of poverty, the proof shows that she was the owner of substantial interests in real property and had three bank accounts with balances totaling more than $8,000. Likewise, although in her moving affidavits herein plaintiff stated that she “ lost ” her employment, the credible evidence adduced upon the hearings proves that she voluntarily left her job at Memorial Hospital in September, 1958. In 1953, when plaintiff swore in an affidavit in a contempt proceeding against defendant that she was “ in desperate financial condition,” she, in fact, had an income in excess of $3,000 a year and *648 in 1954, when she purportedly was 1 ‘ in desperate financial condition,” her income was more than $4,100 a year. At no time did plaintiff advise any court of her interest in real estate or the fact that she had cash deposits in various banks.
Nevertheless, despite plaintiff’s fabrications and concealment of assets, defendant is still obligated to provide for her support to the best of his ability and in accordance with her true needs. Marriage is a continuing obligation and once entered into ‘1 it creates a two-sided equation — which continues to exist in, at least, a changed form, even after the disintegration of the actual relationship.” (See Larkin v. Larkin, 19 Misc 2d 172,174.) As has been stated by this court in the past, no definite formula has been evolved where the amount of support to be fixed in all cases can be determined with mathematical certainty. Fortunately, however, under the law of our State, alimony awards are not rigidly fixed for all time but may be adjusted at any time by either party, in the light of changed need and circumstances. (Civ. Prac. Act, § 1170; Larkin v. Larkin, supra.) A realistic attempt must be made in this instance, as in all cases, to balance the wife’s needs and her independent means, if any, for meeting them, with the husband’s ability to pay. (Phillips v. Phillips, 1 A D 2d 393, 396, affd. 2 N Y 2d 742.)
In the instant proceeding, a comparison of the annual incomes of plaintiff and defendant from 1953 to and including 1959 indicates that plaintiff, for all intents and purposes, was as well off financially as defendant, particularly in view of the fact that this court must give due consideration to defendant’s remarriage and his obligation to support his present wife and children. Contrary to plaintiff’s contention, defendant’s second marriage, the existence of issue of this marriage and their welfare are both relevant to the determination of the present matter. (Larkin v. Larkin, supra, p. 175.) In 1959, for example, plaintiff, while living alone, had a known income of at least $90 per week (including alimony payments from defendant), while defendant’s net income on which his entire family had to live before deducting the alimony payments made to plaintiff, likewise averaged $90 a week from his salary as a music teacher and composer of serious music.
Giving due consideration to plaintiff’s actual needs to maintain herself properly and with due regard to the income, assets, obligations, health, age and financial prospects in the imminent future of both parties, including plaintiff’s ability to be at least partially self-supporting and employed, I find that plaintiff is entitled to alimony from defendant at the rate of $35 per month, the same amount she accepted without protest for a period of *649 five years. In addition thereto, defendant is to continue to pay plaintiff’s hospital insurance premiums as he has done in the past. The amount of alimony herein fixed is made retroactive to March 1,1953, inasmuch as the credible evidence clearly establishes that since that date plaintiff’s known income has been and still is relatively sufficient for her needs.
In the opinion of the court, by continuously accepting payments in a reduced amount for the five-year period here involved, without taking any affirmative action to obtain the fttll amount to which she was entitled pursuant to a written agreement, plaintiff has waived and is now estopped from obtaining the arrears which she seeks in this proceeding (Axelrad v. Axelrad, 285 App. Div. 903, affd. 309 N. Y. 687; Thompson v. Thompson, 197 App. Div. 228; Dandridge v. Dandridge, 17 Misc 2d 356). The fact that plaintiff may have asked defendant for additional money to support her father in no way affects the issue of estoppel, inasmuch as defendant was under no legal obligation to support plaintiff’s father, nor is there any proof that plaintiff demanded additional support for herself during these five years.
In any event, plaintiff’s concealment of substantial assets and income which would have been sufficient to maintain her for the most part between 1954 and 1959 is additional ground, in the discretion of this court, to deny her motion for the entry of judgment for alimony arrears (see Di Giacomo v. Di Giacomo, 1 Misc 2d 731; Civ. Prac. Act, § 1171-b).
Thus, plaintiff’s motions are denied and defendant’s motions are granted in accordance with the foregoing.
No costs are awarded to either party.