Doris Wells Smith FRAWLEY *v.* M. G. SMITH

CA 81-112                                    622 S.W. 2d 194

Court of Appeals of Arkansas
Opinion delivered October 21, 1981

*Mazzanti & Earl,* by: *Eugene J. Mazzanti,* for appellant.

*Jake Brick,* for appellee.

GEORGE K. CRACRAFT, Judge. On March 15, 1970, the parties entered into a property settlement agreement purporting to settle any and all claims each had against the

other arising out of the marriage. This agreement provided, among other things, that the husband pay for the support of their two minor children the amount of $200 a month and as alimony to the wife the amount of $100 per month. This agreement was incorporated in a decree of divorce entered by the court on May 7, 1970, which decree recited "the court accepts the agreement between the parties in lieu of testimony thereon," and ordered payment of alimony accordingly. Both instruments were silent as to the effect of remarriage on the obligation to pay alimony.

The appellant, Doris Wells Smith, remarried in September of that year. The appellee immediately terminated alimony payments to her and informed her that he would make no such payments in the future. He has, however, continued faithfully to make timely payments of child support. Appellant's second marriage was dissolved by divorce in 1976. She received no property settlement or alimony from her second husband.

In November of 1980 the appellant filed in the chancery court her motion seeking judgment against the appellee for all accrued installments of alimony not barred by limitations.

In the trial court, as here, the appellant contended that the fact of remarriage did not automatically terminate the obligation to pay alimony and that same continued both under the decree and as a contract right. The appellee asserted that the remarriage did, without action of either party, relieve him of that obligation and in any event her right to now assert that claim was barred under those rules clarified and announced in *Bethell* v. *Bethell*, 268 Ark. 409, 597 S.W. 2d 576 (1980).

After hearing the testimony and the arguments the court dismissed the appellant's claim under the following statement of its findings and conclusions:

### FINDINGS OF THE COURT

The case of Bethell versus Bethell cited to the

court, I don't think is any authority for anything except — at least, not in this case. The issue before the court at this time is, whether or not a party can continue to receive alimony from a prior marriage upon entering into a subsequent marriage. And I recognize there is not, or, at least I know of no Arkansas authority which says that the alimony shall terminate or that it will continue.

But, this is a court of equity, and to me it seems that it would be inequitable to enforce an order that this woman receive alimony after she remarries. So, the petition will be denied, the court will further enter an order relieving M. G. Smith from payments of further alimony or child support.

Our Supreme Court has on several occasions held that remarriage of the ex-spouse does not automatically terminate the obligation and in *Holt* v. *Holt,* 253 Ark. 456, 486 S.W. 2d 688 (1972), reaffirmed its reasons for so holding.

We have held that a divorced husband must make proper application to the court having jurisdiction to obtain relief from the payment of alimony provided in the decree of divorce from a former wife on account of her remarriage. *Beasley* v. *Beasley,* 247 Ark. 338, 445 S.W. 2d 500; *Wear* v. *Boydstone,* 230 Ark. 580, 324 S.W. 2d 337. . . .

. . . .

The reason for our ruling requiring that application be made for relief from alimony payments was clearly stated in *Wear* v. *Boydstone,* supra, by the following quotation from 27 C.J.S., 994, Divorce § 239c:

Although there is contrary authority, in the absence of a mandatory statute to the contrary, a divorced wife's remarriage to another does not necessarily of itself operate as a release of the former husband's obligation to pay alimony. It

does, however, afford a cogent reason for the court to modify or vacate the order, . . .

The clear implication of these cases is that the court is not required to terminate alimony payments in every case in which a wife remarries. It recognizes that there are circumstances under which continued payments to the ex-spouse may be warranted. It is clear from the cases that the husband who unilaterally ceases payment of alimony upon remarriage of his former wife, does so at his own peril as the obligation continues until terminated by the court having jurisdiction to do so.

However, in *Bethell* v. *Bethell,* supra, the Supreme Court enumerated and analyzed those rules it has followed in a long line of decisions dealing with the power of the chancellor to remit accrued installments of child support and alimony. Although it *ordinarily* does not have that power there are circumstances in which the court is justified in withholding judgment. The power to withhold judgment in a particular case arises from those circumstances in which it appears that the action or conduct of the ex-spouse seeking judgment has been such that equity cannot lend her its aid.

While the circumstances giving rise to that power are varied, those guidelines applicable to the case now under review were stated in *Bethell* as follows:

It has been recognized that a wife may waive her right to a portion of the alimony and support provided her by a decree of divorce. *Graham* v. *Graham,* 174 Cal. App. 2d 678, 345 P. 2d 316 (1959). . . . There may also be waiver by acquiescence, or it may be inferred from the circumstances. *Davis* v. *Davis,* 123 So. 2d 377 (Fla. App. 1960); *Graham* v. *Graham,* supra. . . .

The failure of a wife to take steps to enforce payment of alimony in accordance with the terms of a divorce decree for a long period of years is certainly an important fact to be considered in determining whether there has been a waiver of her right to enforce the decree

according to its terms, *Graham* v. *Graham*, supra; *Axelrad* v. *Axelrad*, supra, [285 App. Div. 903, 138 N.Y.S. 2d 40 (1955)]; *Brant* v. *Brant*, 23 Misc. 2d 646, 200 N.Y.S. 2d 643 (1960); *Schnierle* v. *Schnierle*, 33 Ohio Law Abstract 212, 33 N.E. 2d 674 (Ct. App., 1940). See also, *Royster* v. *Royster*, supra, [339 Ill. App. 250, 89 N.E. 2d 279 (1950)]. It has been held that the courts will be inclined to find waiver if there is an undue delay by a wife in seeking to collect arrearages in alimony. *Herman* v. *Herman*, 17 N.J. Misc. 127, 5 A. 2d 768 (1939). Long delay by a wife in invoking the process of the court to enforce a decree, may also give rise to an estoppel against her claiming accrued alimony. *Sonenfeld* v. *Sonenfeld*, 331 Mich. 60, 49 N.W. 2d 60 (1951); *Brant* v. *Brant*, supra.

While we cannot agree with the chancellor's ruling that it is inequitable in every case to allow judgment for accrued installments of alimony after a wife's remarriage, we do agree with his finding that it would be inequitable to enforce that obligation under the circumstances of this case, and that he should have considered the arguments advanced under *Bethell*. It is our rule however, that on trial *de novo* in chancery cases the decree will be affirmed if it appears to be correct upon the record as a whole, even though the chancellor may have in part or in whole given the wrong reason for his result. *Morgan* v. *Downs*, 245 Ark. 328, 432 S.W. 2d 454 (1968).

In *Bethell* it was stated that waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist with the intent that he shall be forever deprived of its benefits. It may occur when one with full knowledge of the material facts, does something which is inconsistent with that right or his intention to rely upon the right. In *Graham* v. *Graham*, supra, cited with approval in *Bethell*, it was held that such waiver can arise from such conduct as warrants inference of a relinquishment of such right and may be inferred from circumstances indicating an intent to waive.

The proof in this fully developed record clearly estab-

lishes that the appellant had waived any rights she may have once had to claim alimony either under the decree of the court or by virtue of the contract between the parties. The appellee testified that he terminated alimony payments immediately upon learning of appellant's remarriage, and informed her that he would never make another payment of alimony. It was his testimony that she never thereafter mentioned alimony to him or made any demand upon him for payment. He stated that there were numerous conversations between them regarding the children's needs but none with regard to alimony. He testified, and she admitted, that in 1974 she called him about her economic problems and requested that he lend her $300. He made the loan. At that same time she discussed her financial problems regarding the children and he agreed to increase the monthly child support to $250 a month. He faithfully made timely payments in the increased amount for the ensuing seven year period.

During their son's last two years in high school he lived with the appellee, who sent him to college for a year. At some time while the son was living with appellee, he, at the wife's request, assisted in sending the daughter to a private school. The daughter had come to live with the appellee for about a year before the hearing and was living with him at the time of the hearing. Both custodial transfers were made at the request and with the consent of the appellant.

While contending that she never intended to waive her rights to claim alimony, the appellant testified that she asked him about the alimony at the time he ceased making payments, and he informed her that he would pay no more in the future and that he would never thereafter discuss the subject with her. She testified that at the time of her second divorce in 1976 she talked to a lawyer about seeking the arrearage but no legal action was taken. She testified that she had discussed it with two other lawyers at some point in time but still no legal action was ever taken. In the period from September of 1970 to her second divorce in 1976, she was provided for and supported by her second husband, and after her divorce from him she was self-supporting. In that second divorce she did not seek nor obtain either alimony or

property settlement. She admitted that at no time during the ten year period had she taken any legal action to enforce the obligation.

Since we conclude that the facts and circumstances here present established that the appellant has waived any rights which she may have to alimony under the decree, it is axiomatic that her waiver would be equally applicable to any contractual rights, not merged in the decree, which might arise from the separation agreement.

Affirmed.